PITTA & DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 652-3890

Joseph Farelli (JF 4759)
Michael J. D'Angelo (MD 3030)

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TEAMSTERS LOCAL 814 WELFARE FUND,
TEAMSTERS LOCAL 814 PENSION FUND,
TEAMSTERS LOCAL 814 ANNUITY FUND, and
DENNIS FARRELL, STEPHEN McINERNEY,
GEORGE DANIELLO and JAMES O'MARA, AS
TRUSTEES,

         Petitioners,

  -against-

DAHILL MOVING & STORAGE CO., INC.,

         Respondent.
-----------------------------------------------------------------x

07 CV _____

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
* MAY 16 2007 *
BROOKLYN OFFICE

CV 07 2005
SIFTON, J.
POHORELSKY, M.J.

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
PETITION TO CONFIRM AN ARBITRATION AWARD AND
ORDER TO SHOW CAUSE FOR A TEMPORARY
AND PRELIMINARY INJUNCTION**

{00255256.DOC;2}

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    POINT I        THE AWARD SHOULD BE CONFIRMED BECAUSE IT
                        DRAWS ITS ESSENCE FROM THE COLLECTIVE
                        BARGAINING AGREEMENT . . . . . . . .  . . . . . . . . . . . . . . . . . 8

    POINT II       THE COURT SHOULD ISSUE A TEMPORARY
                        RESTRAINING ORDER AND PRELIMINARY INJUNCTION
                        ENJOINING DAHILL TO POST A BOND OR ESCROW A
                        SUFFICIENT AMOUNT OF ASSETS FROM THE SALE OF
                        ITS BUILDING TO SECURE THE AMOUNT AWARDED IN
                        THE AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            A.      The Funds Will Be Irreparably Harmed In The
                    Absence of A Temporary Restraining Order And Preliminary
                    Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            B.      Petitioners Have Demonstrated A Likelihood
                    of Success On The Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            C.      A Balancing Of The Equities Favors Interim Relief. . . . . . . . . . .13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## PRELIMINARY STATEMENT

Petitioners, TEAMSTERS LOCAL 814 WELFARE FUND, TEAMSTERS LOCAL 814 PENSION FUND, TEAMSTERS LOCAL 814 ANNUITY FUND (collectively referred to as the "Funds"), and DENNIS FARRELL, STEPHEN McINERNEY, GEORGE DANIELLO and JAMES O'MARA, as TRUSTEES, (collectively with the Funds referred to as "Petitioners") hereby submit this memorandum of law in support of their Notice of Petition and Verified Petition for an order: (1) confirming the Award of the Arbitrator, Elliott D. Shriftman, Esq., dated and affirmed on May 9, 2007; and (2) directing judgment to be entered thereon for the total sums awarded therein, together with interest from the date of the Award.

Petitioners also submit this memorandum of law in support of their motion for an order temporarily and preliminarily directing and enjoining DAHILL MOVING & STORAGE CO., INC. ("Employer" or "Dahill" or "Respondent") to post a bond sufficient in amount to secure its current indebtedness of no less than $242,947.76 to the Funds pending disposition of this action, or alternatively, temporarily and preliminarily enjoining Dahill to escrow a sufficient amount of the proceeds of the sale of its warehouse and offices to secure its current debt to the Funds of no less than $242,947.76.

In summary, an industry arbitration award dated May 9, 2007 (the "Award") was issued in which Dahill was ordered to pay $242,947.76 to the Funds and which Award remains unpaid. Further, Dahill is also the subject of a separate lawsuit (CV-07-0897)("Contribution Action") brought by the Petitioners against Dahill in which the Petitioners are seeking to collect over four hundred thousand dollars ($400,000) in unpaid benefit contributions due to the Funds. This Court has already issued an amended order to

{00255256.DOC;2}

show cause and temporary restraining order in the Contribution Action, dated May 1, 2007 ("TRO") enjoining Dahill's principals from receiving the proceeds of a sale of a building which is the only asset from which Dahill can satisfy the unpaid contributions sought by the Funds in the Contribution Action.

Accordingly, under the precedent of the U.S. Court of Appeals for this Circuit which favors the confirmation of labor arbitration awards and in light of the irreparable harm the Funds would suffer should Dahill be permitted to dispose of the sole asset which could satisfy the monies Dahill was ordered to pay to the Funds in the Award, the verified petition to confirm the Award should be granted with all due speed and the Petitioners' motion for a temporary restraining order and preliminary injunction preserving the proceeds from the sale of Dahill's sole asset should be granted.

## STATEMENT OF UNDISPUTED FACTS

The Funds are established and maintained by the International Brotherhood of Teamsters Local 814 ("Union") and various employers pursuant to the terms of successive collective bargaining agreements and agreements and declarations of trust, with the most recent Restated Agreement and Declaration of Trust of the Teamsters Local 814 Pension Fund and Teamsters Local 814 Welfare Fund and Teamsters Local 814 Annuity Fund effective August 25, 2004 ("Trust Agreement"), in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Funds provide various fringe benefits to eligible employees on whose behalf employers contribute pursuant to the collective bargaining agreements. As collectors and trustees of employer contributions made pursuant to collective bargaining agreements between employers and

the Union, the Funds are third-party beneficiaries to such collective bargaining agreements. (Verified Petition ¶ 3; Petrillo Aff. ¶ 5; 6)

The Funds are employee benefit plans within the meaning of ERISA Section 3(3), 29 U.S.C. § 1002(3), and are multi-employer plans within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37). (Verified Petition ¶ 4). The Funds are administered by a Board of Trustees composed of an equal number of employer and employee representatives, as required by Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Funds maintain their offices and are administered at 33-01 38th Avenue, Long Island City, New York 11101. (Verified Petition ¶ 5; Petrillo Aff. ¶ 7)

Petitioners Dennis Farrell, Stephen McInerney, George Daniello, and James O'Mara ("Trustees") are members of each of the Funds' Boards of Trustees. The petitioner Trustees exercise discretionary authority, control and responsibility with respect to management and administration of the Funds and disposition of assets of the Funds. As such, petitioner Trustees are fiduciaries with respect to the Funds, within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). (Verified Petition ¶ 6; Petrillo Aff. ¶ 7)

Dahill is a corporation duly organized and existing pursuant to the laws of the State of New York and is doing business in New York with its principal place of business at 5620 First Avenue, Brooklyn, New York 11220. Dahill is an "employer" within the meaning of the LMRA. (Verified Petition ¶ 7; Petrillo Aff. ¶ 8)

## LABOR AGREEMENTS

Dahill is and was a party to collective bargaining agreements with the Union, including for the period from June 22, 2002 through April 30, 2005 ("CBA"), and a Memorandum of Agreement extending, with modifications, the CBA for the period from May 1, 2005 through April 30, 2010 ("MOA") (Verified Petition ¶ 8; Exhibits C, D & E; Petrillo Aff. ¶ 9).

Under the CBA and the MOA, Dahill is and was obligated to make contributions to the Funds on behalf of certain of its employees. Under the CBA and the MOA, Dahill is and was bound by all terms and conditions of the Trust Agreement, including all rules, regulations, procedures promulgated by the Trustees of the Funds pursuant thereto. (Verified Petition ¶ 9; Exhibit F; Petrillo Aff. ¶ 10)

Article 29 of the CBA contains an extremely broad arbitration clause which provides:

> Any and all complaints, disputes, or grievances of any kind whatsoever arising between the Union and the Employer involving any questions, interpretations, or applications of any clause of this Agreement, <u>or any acts, conduct or relations between the parties, directly or indirectly</u>, which shall not have been adjusted or resolved by the parties hereto as provided by the procedures set forth below, shall be referred to final and binding arbitration. (emphasis added) (Verified Petition ¶ 10; Petrillo Aff. ¶ 11)

Article VII, Section 4(d) of the Trust Agreement, incorporated into the CBA by reference, also provides that petitioner Trustees may commence arbitrations against an employer to collect any payments due the Funds. (Verified Petition ¶ 11; Petrillo Aff. ¶ 12)

## ENFORCEMENT OF THE 50/50 RULE

Article 1, Section F of the CBA provides, in part:

> After compliance with the contract provisions relating to employing Seniority List Employees, an Employer shall be permitted to employ the number of Casual Employees equal to the number of Industry Employees on a work day. (emphasis added)

This contract provision is known as the "50/50 Rule". Under the CBA, employers paid lower hourly wage rates to Casual Employees than Industry Employees and made far less contributions to the Funds for Casual Employees than it was required to make for Industry Employees. (Verified Petition ¶ 12; Petrillo Aff. ¶ 13)

On September 3, 2004, the Funds sent contributing employers a notice reminding them of their contractual obligation to comply with the 50/50 Rule. The Funds' September 3, 2004 notice also advised them that the Funds would be auditing the employers to ensure their compliance with the 50/50 Rule and that if any audit determined that an employer had violated the 50/50 Rule, the employer would be liable to the Funds for any contributions the employer should have made for Industry Employees, plus an amount equal to the hourly wages for the number of Industry Employees that the employer should have employed. (Verified Petition ¶ 13; Petrillo Aff. ¶ 14)

The Funds caused to have an initial audit and then a revised audit of Dahill's books and records conducted. The results of the Funds' revised audit of Dahill showed that Dahill had repeatedly violated the 50/50 Rule during the period from December 20, 2002 to March 28, 2004 ("Audit Period") by hiring 1,033 more Casual Employees on a daily basis than it was contractually permitted. (Verified Petition ¶ 14; Petrillo Aff. ¶

15). The Funds' revised audit of Dahill also showed that based upon Dahill's violations of the 50/50 Rule, Dahill owed $242,947.76 to the Funds for the Audit Period. The $242,947.76 deficiency was based upon the amount of contributions Dahill should have made to the Funds and the hourly wages Dahill would have had to pay, if it had employed 1,033 Industry Employees, instead of the 1,033 Casual Employees it employed in violation of the 50/50 Rule. (Verified Petition ¶ 15; Petrillo Aff. ¶ 16)

After Dahill failed to pay the $242,947.76 due the Funds based upon the revised audit, the Funds demanded arbitration against Dahill to collect the same, as well as any other monies (i.e. interest, liquidated damages, audit fees, attorneys fees) they were entitled to be paid under the Trust Agreement (collectively "Revised Audit Deficiency"). (Verified Petition ¶ 16; Petrillo Aff. ¶ 17)

## THE ARBITRATION AND AWARD

Dahill did not bring any action to enjoin or stay the arbitration demanded by the Funds. Instead arbitration hearings were held on November 13, 2006 and March 6, 2007 before mutually agreed upon Arbitrator Elliott D. Shriftman regarding the Funds' demand that Dahill pay the Revised Audit Deficiency. (Verified Petition ¶ 17; Petrillo Aff. ¶ 18)

Both the Funds and Dahill fully participated at the November 13, 2006 and March 6, 2007 arbitration hearings. They were afforded a full opportunity to present oral arguments in favor of their case, call and cross-examine witnesses, and present documentary evidence in support of their case. (Verified Petition ¶ 18; Petrillo Aff. ¶ 19). Dahill's counsel also requested and was permitted an opportunity to submit a post-hearing brief to Arbitrator Shriftman in support of Dahill's arguments in the case. Funds'

counsel also submitted a post-hearing brief in support of the Funds' position in the case. (Verified Petition ¶ 19; Petrillo Aff. ¶ 19)

Based upon the evidence and argument presented to him by counsel for the respective parties, including arguments raised by Dahill's counsel in his post-hearing brief, Arbitrator Shriftman issued the Award in which he found that Dahill had repeatedly violated the 50/50 Rule and that Dahill had stipulated to the accuracy of the $242,947.76 which the Funds had determined that Dahill owed to the Funds based upon such violations. (Verified Petition ¶ 20; Petrillo Aff. ¶ 20). Arbitrator Shriftman also found in the Award that the Funds were entitled to collect all of the $242,947.76 as an appropriate measure of damages and that Dahill was not entitled to any claimed offset of such damages. (Verified Petition ¶ 21; Petrillo Aff. ¶ 21)

In accordance with his decision, Arbitrator Shriftman ordered in the Award that Dahill pay to the Funds $242,947.76, plus interest and liquidated damages (only on the portion of the damages which were based upon unpaid contributions, not wages), as well as reasonable attorneys' fees and audit fees. (Verified Petition ¶ 22; Petrillo Aff. ¶ 22). The portion of the $242,947.76 in damages that were based upon unpaid benefit contributions was $85,324.24. Article VII, Section 4(d) of the Trust Agreement provides that the Funds shall be paid interest on any unpaid benefit contributions at the rate of 18% per annum and liquidated damages on the same unpaid contributions at the rate of 20%. (Verified Petition ¶ 23; Petrillo Aff. ¶ 23) The Employer has failed to pay any part or portion of the amounts it was ordered to pay to the Funds by Arbitrator Shriftman in the Award. (Verified Petition ¶ 24; Petrillo Aff. ¶ 24)

## THE RELATED CONTRIBUTION ACTION

On March 2, 2007, the Petitioners filed an action against Dahill in this Court to collect over four hundred thousand dollars ($400,000) in unpaid benefit contributions due from Dahill to the Funds. (Verified Petition ¶ 25; Petrillo Aff. ¶ 25) On May 1, 2007, this Court issued the TRO in which it enjoined Dahill, its officers, agents, employees and attorneys from transferring or otherwise, from using any amounts received from the proceeds of the sale of the building housing its offices and warehouse ("Premises") until a hearing in the Contribution Action. (Verified Petition ¶ 26; Petrillo Aff. ¶ 28). The next hearing in the Contribution Action is scheduled before the Court for today, May 16, 2007.

## ARGUMENT

### POINT I

### THE AWARD SHOULD BE CONFIRMED BECAUSE IT DRAWS ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT

The fundamental principles of labor arbitration established in the Supreme Court's celebrated Steelworker Trilogy: *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358 (1960) ("The Trilogy") have served the industrial relations community well by fostering reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising under the terms of a collective bargaining agreement. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S. Ct.

1415 (1986); *Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co., Inc.*, 944 F. 2d 1037, 1043 (2d Cir. 1991) (citing *Schneider Moving and Storage Co. v. Robbins*, 466. U.S. 364, 371-72, 104 S. Ct. 1844, 1848-49 (1984)).

Under the Trilogy and its progeny, including decisions of the United States Court of Appeals for the Second Circuit, arbitration of disputes pursuant to the provisions of a collective bargaining agreement are liberally encouraged as basic to federal labor policy. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74-75 (2d Cir. 1997). *See also, Connecticut Light & Power Co. v. Local 420, International Brotherhood of Electrical Workers*, 718 F. 2d 14, 20 (2d Cir. 1983) ("arbitrators who are chosen for their knowledge of the practices of the industry and the shop have the primary responsibility for interpreting the Agreement").

The role of a court in reviewing an arbitration award is extremely limited. An award is legitimate and should be confirmed so long as it "draws its essence" from the collective bargaining agreement and does not "manifest an infidelity" to the agreement. *See, e.g., United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 592, 597-99, 80 S.Ct. 1358, 1360-1361 (1960). Neither a disagreement with the arbitrator's findings of fact nor a difference of opinion about the correct interpretation of the contract is an occasion for judicial intervention. As explained by the U.S. Supreme Court:

> As long as the arbitrator is <u>even arguably</u> construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 28, 108 S.Ct. 364, 367 (1987) (emphasis added). *Accord, Abram Landau Real Estate v. Bevona, supra* at

74-75.

In this case, the Award draws its essence from the CBA. Arbitrator Shriftman found in the Award that the language of the 50/50 Rule set forth in the CBA was clear and unambiguous and that Dahill had repeatedly violated the 50/50 Rule. In fact, Dahill stipulated at hearings held before Arbitrator Shriftman that the $242,947.76 in damages that the Funds calculated based upon Dahill's violations of the 50/50 Rule were accurate.

Arbitrator Shriftman also concluded in the Award that, contrary to Dahill's contention, the CBA and the Trust Agreement which is specifically incorporated into the CBA by reference, authorized the Trustees and Funds to collect the $242,947.76 from Dahill as an appropriate measure of damages for its violations of the 50/50 Rule. Further, Arbitrator Shriftman applied the clear and unambiguous language of the Funds' refund policy, promulgated in accordance with the Funds' powers under the CBA and Trust Agreement, in ruling that Dahill was not entitled to any claimed offset to the $242,947.76 in damages due the Funds.

Clearly, Arbitrator Shriftman drew the essence of the Award from the CBA. Therefore, under the afore-cited Supreme Court authority and the precedent of this Court, the Award should be confirmed.

## POINT II

### THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DAHILL TO POST A BOND OR ESCROW A SUFFICIENT AMOUNT OF ASSETS FROM THE SALE OF ITS BUILDING TO SECURE THE AMOUNT AWARDED IN THE AWARD

A preliminary injunction preserves the status quo between the parties pending a final determination of the merits of the action. *See, e.g., University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d

{00255256.DOC;2}    10

Cir. 1985). In this Circuit, "[a] party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and that the balance of the hardships tips decidedly toward the movant." *Tom Doherty Assocs. v. Saban Entmt., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (citations omitted). *See also Velez v. Prudential Health Care Plan of N.Y.*, 943 F. Supp. 332, 338 (S.D.N.Y. 1996); *see also Federal Express Corp. v. Federal Expresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000); *Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Abdul Wali*, 754 F.2d at 1025. Petitioners have satisfied each of the foregoing elements and are entitled to the interim relief requested.

### A. The Funds Will Be Irreparably Harmed In The Absence of A Temporary Restraining Order And Preliminary Injunction

In determining whether a preliminary injunction should issue, the most critical factor in the above test is the showing of irreparable harm. *Reuters Ltd.*, 903 F.2d at 907; *Buckingham Corp. v Karp*, 762 F.2d 257, 262 (2d Cir. 1985); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 126 (2d Cir. 1984); *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 260 (2d Cir. 1984); *Muze, Inc. v. Digital On-Demand, Inc.*, 123 F. Supp.2d 118, 126 (S.D.N.Y. 2000). Irreparable harm exists where a plaintiff demonstrates an injury for which monetary damages are not adequate compensation or cannot be reasonably determined. *Gibson v. U.S.,I.N.S.*, 541 F. Supp. 131, 135 (S.D.N.Y. 1982); *Janmort Leasing, Inc. v Econo-Car Int'l, Inc.*, 475 F. Supp. 1282, 1294 (E.D.N.Y. 1979).

However, while monetary injury does not generally constitute irreparable harm, "an exception to this general rule has been recognized where the defendant is insolvent or insolvency is threatened." *Federal Strategic Income Fund v. Mechala Group Jamacia Ltd.*, No. 99 Civ. 10517, 1999 WL 993648, *8 (S.D.N.Y. Nov. 2, 1999). In those situations, preliminary injunctive relief may be necessary "because, while monetary damages may be theoretically available, 'as a practical matter, the defendant would not or could not respond fully for those damages.'" *Id.* (citing *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 912 (S.D.N.Y. 1986)); *see also United States Dept. of Housing and Urban Dev. v. K. Capolino Constr. Corp.*, No. 01 Civ. 390, 2001 WL 487436, *4 (S.D.N.Y. May 7, 2001) (granting preliminary injunction).

As set forth in the accompanying affidavit and Verified Petition of Linda Petrillo, the Award was issued against Dahill ordering it to pay to the Funds $242,947.76, plus interest and liquidated damages (only on the portion of the damages which were based upon unpaid contributions, not wages), as well as reasonable attorneys' fees and audit fees. Dahill has failed to make any payments towards satisfaction of the Award. Absent Dahill being required to post a bond or other equitable relief, such as escrowing sufficient proceeds from the sale of the Premises, the Funds will experience irreparable harm since the Premises are, by Dahill's own account, the only asset from which Dahill can satisfy the monies it was ordered in the Award to pay to the Funds, and the Funds have no security or legal assurance that the principals of Dahill will pay such Award with the proceeds of the sale of the Premises. This Court recognized such irreparable harm that could be caused to the Funds by permitting Dahill's unrestricted use of the proceeds of sale of the Premises when it issued the TRO in the Contribution Action.

### B. Petitioners Have Demonstrated A Likelihood of Success On The Merits

Although likelihood of success in the action at bar is clear, a party seeking injunctive relief based on a likelihood of success need not show that success is an absolute certainty. The movant "need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali*, 754 F.2d at 1025; *see also Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *DiLaura v. Power Auth. of State of New York*, 654 F. Supp. 641, 647 (W.D.N.Y. 1987); 11 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2948 at 452 (1973).

As discussed above, *infra*, Point I, arbitration of labor disputes pursuant to the provisions of a collective bargaining agreement are liberally encouraged as basic to federal labor policy. Further, courts will confirm a labor arbitration award so long as it arguably draws its essence from a collective bargaining agreement. Since the Award is legitimate and "draws its essence" from the CBA, it should be confirmed and Petitioners have a strong likelihood of success on the merits.

### C. A Balancing Of The Equities Favors Interim Relief

To the extent the actions of Dahill have created an "imbalance of hardships" in favor of the Funds, the Funds "need not show a likelihood of success but need only raise substantial questions going to the merits of the case." *Travellers Int'l AG v. Trans World Airlines, Inc.*, 684 F. Supp 1206, 1216 (S.D.N.Y. 1986); *accord Roso-Lino Beverage. Distribs., Inc.*, 749 F.2d at 127. As the foregoing discussion shows, the Funds have demonstrated that, at a minimum, there are substantial questions going to the merits.

Further, the balance of hardship tips decidedly towards Funds, as recognized by this Court in its issuance of the TRO in the Contribution Action.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court confirm the Award in its entirety on an expedited basis and order compliance therewith, directing judgment to be entered thereon for the total sums awarded therein, together with interest from the date of the Award and for an order temporarily and preliminarily directing and enjoining Dahill to post a bond sufficient in amount to secure its current indebtedness of no less than $242,947.76 to the Funds pending disposition of this action, or alternatively, temporarily and preliminarily enjoining Dahill to escrow a sufficient amount of the proceeds of the sale of its warehouse and offices to secure their current debt to the Funds of no less than $242,947.76.

Dated: New York, New York
May 16, 2007

Respectfully submitted,

PITTA & DREIER LLP
*Attorneys for Petitioners*

By: _____
Michael J. D'Angelo (MD 3030)
499 Park Avenue
New York, New York 10022
(212) 652-3890