UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
Teamsters Local 814 Welfare Fund, Teamsters Local 814 Pension Fund, Teamsters Local 814 Annuity Fund, and Dennis Farrell, Stephen McInerney, George Daniello and James O'Mara, as Trustees,

Petitioners,

- against -

Dahill Moving & Storage Co., Inc.,

Respondent.

-------------------------------------------X

CV-07-2005 (CPS)

MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

Petitioners Teamsters Local 814 Welfare Fund, Teamsters Local 814 Pension Fund, Teamsters Local 814 Annuity Fund (the "Funds"),[1] and Dennis Farrell, Stephen McInerney, George Daniello and James O'Mara as Trustees ("Trustees"), initiated this action against respondent Dahill Moving and Storage Company, Inc. ("Dahill"). On May 16, 2007, petitioners filed a petition to confirm an arbitration award in the amount of $242,947.76, plus interest and damages, and reasonable attorneys' fees and audit fees, pursuant to Section 301 of the Labor Management Relations

[1] These Funds are employee benefit plans and provide fringe benefits to eligible employees. *See* 29 U.S.C. § 1002. Petitioners currently have pending before this Court a separate action against Dahill to recover unpaid contributions to the Funds (the "Contribution Action"). A preliminary injunction was issued in that action on May 30, 2007, ordering John DiBaptista and Michael DiBaptista, principal officers of Dahill, to place their respective shares of the proceeds from the anticipated sale of Dahill's warehouse in escrow pending the outcome of that litigation.

Act, 29 U.S.C. § 185 ("LMRA"),[2] and the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA").[3] On May 30, 2007, the petition to confirm the arbitration award was granted. Presently before the Court is petitioners' motion for attorneys' fees, costs, and audit fees, as well as their motion to direct judgment in their favor in the amount of $242,947.76, plus $17,064.85 in liquidated damages, and $15,864.14 in interest, as well as $22,130.00 in attorneys' fees, $529.20 in costs, and $19,515.00 in audit fees, for a total payment of $318,050.96. For the reasons stated below, petitioners are awarded $18,864.50 in attorneys' fees, but the request for audit fees and costs is denied.

## BACKGROUND

The following facts are taken from the submissions of the parties in connection with this motion and the record of the

---

[2] In relevant part, the statute reads:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

[3] Under the FAA, parties to an arbitration agreement may make an application to a federal district court for an order confirming an arbitration award. *See* 9 U.S.C. § 9. In the present case, the FAA is not applicable since in cases brought pursuant to Section 301 of the LMRA, the FAA does not apply. *See Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812 Intern. Broth. of Teamsters,* 242 F.3d 52 (2d Cir. 2001). However, "federal courts have often looked to the Act for guidance in labor arbitration cases." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 41 n.9 (1987).

prior proceedings before the undersigned.

The Funds are established and maintained by Local 814, International Brotherhood of Teamsters (the “Union”) and various employers pursuant to the terms of successive collective bargaining agreements (CBAs) and declarations of trust, the most recent of which is the Restated Agreement and Declaration of Trust of the Teamsters Local 814 Pension Fund, Teamsters Local 814 Welfare Fund and Teamsters Local 814 Annuity Fund, effective August 25, 2004 (the “Trust Agreement”). The Funds provide fringe benefits to eligible employees on whose behalf employers contribute pursuant to the CBAs.

Respondent Dahill, a moving and storage company, is a party to the CBA and a Memorandum of Agreement (the “MOA”) extending, with modifications, the CBA for the period from May 1, 2005 through April 30, 2010. Under both the CBA and MOA, Dahill is bound to the terms and conditions of the Trust Agreement and is obligated to make contributions to the Funds on behalf of certain of its employees. Under a clause in the CBA referred to as the “50/50 Rule,” Dahill is permitted to employ a number of “Casual Employees” equal to (but not greater than) the number of “Industry Employees” employed on a given work day.[4] Casual Employees are paid a lower hourly rate than Industry Employees

[4] Casual Employees are those workers who have been paid for less than 800 hours work in a calender year, while Industry Employees are those workers have been paid for 800 or more hours.

and Dahill is required to make fewer benefit contributions to the Funds for Casual Employees.

In September 2004, the Funds informed Dahill that they would be performing an audit to ensure that Dahill was complying with the 50/50 Rule and that it was not employing more Casual Employees than Industry Employees. The Funds further informed Dahill that, if Dahill had violated the 50/50 Rule, Dahill would be liable for any benefit contributions it should have made for Industry Employees, plus an amount equal to the difference in hourly wages between Casual Employees and Industry Employees for the number of Industry Employees Dahill should have employed. The Funds conducted an initial audit, which was followed by a revised audit of respondent's books and records. The revised audit revealed that Dahill had in fact violated the 50/50 Rule during the period of December 20, 2002 to March 28, 2004, by hiring 1,033 more Casual Employees than contractually permitted and that Dahill owed the Funds $242,947.76 as a result. Of that amount, $85,324.24 was for unpaid benefits contributions and the remaining $157,623.52 was for the difference in wages (the "wage assessment").

The Funds demanded the amount due and when Dahill failed to make payment, the Funds sought arbitration for the amount due, plus any other monies (such as liquidated damages, interest, and

attorneys' fees) they were entitled to be paid under the CBA.[5]

Arbitration hearings were held on November 13, 2006 and March 6, 2007 before a mutually agreed upon arbitrator. On May 9, 2007, the arbitrator found that Dahill had violated the 50/50 Rule, that the amount due had been computed correctly, that the Funds were entitled to collect the entire amount of $242,947.76 as damages, and that Dahill was not entitled to any offset of that amount. Accordingly, the arbitrator awarded the Funds $242,947.76 plus interest and liquidated damages, as well as "reasonable attorneys' fees and costs, including the cost of the audit."[6] At the time of the filing of the petition to confirm the award, Dahill had not paid any portion of the award which petitioners sought to enforce.

On May 16, 2007, petitioners filed a petition to confirm the award with the Court as well as motions for a temporary restraining order and preliminary injunction requiring respondent to post a bond to secure the arbitration award or to escrow a sufficient amount of the proceeds of a pending sale of its warehouse to secure award. On May 30, 2007, this Court denied petitioners' motion for a preliminary injunction and granted

---

[5] The CBA provides that "any and all complaints, disputes, or grievances of any kind whatsoever arising between the Union and the Employer" shall be resolved through binding arbitration.

[6] Interest and liquidated damages were awarded only on the unpaid contributions, not on the wage assessment. The CBA provides that the Funds be paid (1)interest on unpaid contributions at the rate of 18% per year and (2)liquidated damages equal to 20% of unpaid contributions.

petitioners' motion to confirm the arbitration award. Petitioners were directed to settle judgment on notice reflecting both the arbitration award and any application for attorneys' fees and audit fees. *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 2007 WL 1580085 (E.D.N.Y. May 30, 2007).

**DISCUSSION**

*Attorneys' Fees*

Petitioners seek $22,130 in fees, which includes both the arbitration proceedings and the petition for confirmation of the award.[7] The award confirmed by the Court included attorneys' fees for the arbitration proceedings and, pursuant to the Trust Agreement, petitioners are entitled to attorneys' fees for the petition for confirmation.[8]

---

[7] The fee amount sought by petitioners' counsel does not include the time spent in preparation for this motion. Farelli Decl. ¶ 28.

[8] Article VII, Section 4(d) of the Trust Agreement states in relevant part:

> If the arbitrator determines that a Contribution delinquency or any other payment delinquency exists, the arbitration award shall provide for the assessment against the Employer, in addition to the amount of said delinquency or deficiency, of interest on the contributions owed at the rate of 18% per annum, attorneys fees and costs, liquidated damages of the greater of the interest owed or twenty (20%) percent of the contributions determined to be due, the cost of the audit and further, for assessment of all subsequent costs and attorneys' fees should the Trustees seek to have the award confirmed by the court.

Trust Agreement, Petitioners' Exhibit (Pet. Exh.) A, attached to Farelli Declaration ("Farelli Decl.").

The award confirmed by the Court provides for "reasonable attorneys' fees and costs, including the cost of the audit." Arbitration Award at 24, Pet. Exh. B. The award does not itself determine the amount of costs and attorneys fees. The parties have submitted the determination of these amounts to the undersigned.

The Second Circuit uses the “presumptively reasonable fee,” known as the “lodestar figure” (or “lodestar”) in other circuits, to determine reasonable attorneys’ fees for federal claims. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118 (S.D.N.Y. 2007). The presumptively reasonable fee “is arrived at by ‘multiplying the number of hours reasonably expended on the litigations ... by an hourly rate.’” *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)).

*Hourly Rates*

Petitioners seeks attorneys’ fees at the hourly rates of attorneys practicing in the Southern District of New York (“Southern District”), which are higher than the hourly rates charged in the Eastern District. Respondent opposes the application of Southern District hourly rates to this action.

The reasonable rate used to determine the amount of attorneys' fees to award is calculated according to the prevailing rates in the district in which the court sits. *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). However, “the district court may adjust th[e] base hourly rate to account for a plaintiff's reasonable decision to retain

out-of-district counsel." *Arbor Hill*, 493 F.3d at 111-112. When "deciding whether to use an out-of-district hourly rate in its fee calculation" the district court should look at, "what a reasonable, paying client would be willing to pay," to have the case litigated efficiently. *Id* at 112.

A reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place and one which has a high rate of success with similar cases. Hiring an attorney located near the courthouse in which the litigation is to take place minimizes expenses incurred as a result of an attorney's travel time.

Here, petitioners hired the law firm of Pitta & Dreier LLP, which maintains offices in the Southern District. Pitta & Dreier LLP's labor practice, "is concentrated in client representation in traditional labor and management relations matters, including but not limited to grievance arbitration and mediation services and related court and administrative agency litigation." Pitta & Dreier website, http://www.pittadreier.com (last visited on February 15, 2008). Pitta & Dreier has represented petitioners in prior actions, including the arbitration proceedings underlying the instant petition.

The courthouses for the Southern and Eastern Districts of New York are minutes away from each other, on either side of the East River. Travel time between the Southern and Eastern

Districts is minimal. Although there may be other firms specializing in labor law in the Eastern District, a reasonable paying client would, like petitioners, hire Pitta & Dreier LLP even though its office is located in the Southern District, based on the firm's experience, success rate, prior representation of petitioners, and proximity to the courthouse in which the litigation would take place.[9] In addition, the arbitration proceedings, which are included in petitioners' application for attorneys' fees, were held in the Southern District. Accordingly, I will apply the billing rates of attorneys located in the Southern District.

In order to set the hourly rates, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district. *Miele v. New York State Teamsters Conference Pensions & Retirement Fund*, 831 F.2d 407 (2d Cir. 1987). The prevailing market rate is determined by "rely[ing] on [the court's] own knowledge of comparable rates charged by lawyers in the district," *Morris* v. Eversley, 343 F.Supp.2d 234, 345 (S.D.N.Y. 2004)(citing *Ramirez v. New York City Off-Track Betting Corp.*, No. 93-CV-0682, 1997 WL 160369, at *2 (S.D.N.Y. 1997)) "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc.*, No. CV-02-2842, 2007 WL 2229993, at *2

---

[9] I note that respondent, presumably a reasonable paying client, also chose to hire counsel practicing in the Southern District.

(E.D.N.Y. 2007)(citing *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

In the Southern District, awarded rates range from $200 per hour for associates to over $400 per hour for senior partners. *See e.g., Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp.*, No. 00-CV-0887, 2004 WL 1118245, at *6 (S.D.N.Y. 2004) (approving $200 per hour for associates with from four to ten years of experience); *Mingoia v. Crescent Wall Systems*, No. 03-CV-7143, 2004 WL 1885952, at *5 (S.D.N.Y. 2004) (awarding attorney's fees at the rate of $325 per hour for an attorney in a small to medium-sized firm with over ten years of ERISA litigation experience); *Sheehan v. Metropolitan Life Ins. Co.*, 450 F.Supp.2d 321 (S.D.N.Y. 2006) (awarding $425 hourly rate to senior partner and $300 hour to associates in an ERISA action).

Petitioners' lead attorney, Joseph Farelli ("Farelli"), of the law firm Pitta & Dreier LLP, has submitted a declaration in support of the application for attorneys' fees. Farelli Decl. Petitioners seek fees for three attorneys who worked on this action: Farelli, Vincent Pitta ("Pitta"), and Michael D'Angelo ("D'Angelo"). The hourly rate charged by Pitta is $400, the hourly rate charged by Farelli is $250 for the work he performed as a senior associate and $325 for the work performed once he became a partner in January 2007, and the hourly rate charged by

D’Angelo is $250.

Farelli briefly describes his qualifications as an attorney with 13 years experience in arbitration and litigation against employers for purposes of collecting unpaid benefit contributions. Farelli Decl. ¶ 24, n. 1. Petitioners fail to provide a description of the qualifications of Pitta or D’Angelo. Under these circumstances, the Court may deny fees for Pitta and D’Angelo. *See Disney Enters., Inc. v. Merchant*, No. 05-CV-1489, 2007 WL 1101110, at *8 (N.D.N.Y. 2007) (collecting cases). However, the Court retains discretion to consider the fee application if the missing information can be obtained from other sources. *See id.* Here, the Pitta & Dreier LLP website states that Pitta is the managing and founding partner of the firm with more than twenty-five years of experience in labor law. D’Angelo is listed as an associate at the firm, but the website does not state his level of experience. *See* Pitta & Dreier website, (last visited February 15, 2008). Although D’Angelo’s experience is not described, Farelli’s declaration states that senior associates and partners worked on this action, *see* Farelli Decl. ¶ 24, justifying an inference, not refuted by respondent, that D’Angelo is a senior associate.

The rates charged by petitioners’ counsel comport with the rates generally charged in the Southern District, by lawyers with comparable experience. Since the billing rates are in

line with prevailing market rates, fees will be awarded at the following hourly rates: $400 per hour for Pitta; $250 per hour for D’Angelo; $250 for Farelli for work performed while a senior associate and $325 for work performed once he was appointed partner.[10]

*Hours Expended*

“[A]ny attorney ... who applies for court-ordered compensation ... must document the application with contemporaneous time records.” *New York State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). These records should specify, for each attorney, the date, the hours expended and the nature of the work. *Id.* However, “[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures.” *Aiello v. Town of Brookhaven,* No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 345 (E.D.N.Y. 1998)).

Petitioners’ counsel has submitted contemporaneous time records in support of this fee motion. These time records are

[10] Respondent’s only objection to petitioners’ application for attorneys’ fees is that Farelli should not be permitted to bill his time at the rate of a partner since he was a senior associate when he began work on this case. Given that the time records submitted by Farelli accurately reflect the change in his rate and considering that he spent the majority of time on this case after he became partner, I see no reason to use the senior associate rate for the work performed after he became partner.

from counsel’s computerized time and billing system and include the date on which services were performed, the identity of the attorney performing the described services, and the rates charged by each attorney. Farelli Decl. ¶ 25; Pet. Exh. F, attached to Farelli Decl.[11]

Having reviewed the time records, I find that the entries for D’Angelo and Farelli are deficient for a number of reasons. As an initial matter, the majority of time entries for Farelli and D’Angelo list multiple tasks performed during large blocks of time, without specifying the amount of time spent on each individual task.[12]

The “commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities.” *Soler v. G & U Inc.*, 801 F.Supp. 1056, 1061 (S.D.N.Y. 1992). The remedy for such vague entries is to apply percentage cuts in the attorneys fees. *See Aiello*, 2005 WL 1397202, at *3 (collecting cases). By failing to

---

[11] The time records include asterisks next to specific entries. It appears that these marked entries represent the hours of work for which fees are being sought. Based on the review of these records, it appears that counsel failed to include one hour of time billed at $250 from the application for fees. This Court will rely on the total amount of fees requested and not consider this additional $250 entry.

[12] Of Farelli’s 18 time entries, only 3 entries correspond to individual tasks. Of D’Angelo’s 7 entries, only 1 entry corresponds to an individual task. An example of the block entries includes Farelli’s March 6, 2007 time entry for 5.8 hours: “Review hearing notes and hearing exhibits; Review copies of trust agreements; Conference with Jane Lauer Barker regarding Employer’s sale of assets; Prepare for arbitration; Represent client in arbitration.” Pet. Exh. F.

account for the time associated with each individual task performed, the Court cannot determine the reasonableness of the number of hours expended by Farelli and D'Angelo.

Even with an impeded ability to determine the reasonableness of the tasks performed, it is clear that certain blocks of time charged by Farelli and D'Angelo are excessive.[13] In such a situation, the Court may exclude these hours from the calculation of fees, *Perez v. Jasper Trading, Inc.,* No. 05-CV-1725, 2007 WL 4441062, at *10 (E.D.N.Y. 2007), or impose an across the board percentage cut. *In re "Agent Orange" Products Liab. Litig.,* 818 F.2d 226, 237-238 (2d Cir. 1987).

Given these deficiencies in Farelli and D'Angelo's time entries, I apply an across the board reduction of fifteen percent to the fees sought for the time expended by Farelli and D'Angelo. However, I find that the time charged by Pitta is reasonable and award $360 in fees for his services.[14] Accordingly, I award $360 for Pitta's services, $14,743.25 for Farelli's services, and $3,761.25 for D'Angelo's services for a

---

[13] For example, on May 18, 2007, D'Angelo charged 2.50 hours for the following: "Review and analyze executed order to show cause. Coordinate service of same. Draft letter to Dahill's attorney re: same. Telephone conference with Dahill attorney re: adjourning return date. Review and analyze letter to court. Deview [sic] court order re: scheduling of return date. Advise trustees of executed order to show cause." None of the listed activities, as described, should have required more than ten minutes of D'Angelo's time.

[14] Pitta submitted three time entries. Each entry represented a discrete task for which he billed a reasonable period of time.

total attorneys’ fees award of $18,864.50.[15]

*Costs*

Petitioners seek costs in the amount of $529.20. Costs are ordinarily recoverable if they are “incidental and necessary to the litigation.” *Tips Exports, Inc., v. Music Mahal, Inc.,* No. 01-CV-5412, 2007 WL 952036, at * 11 (E.D.N.Y. 2007). Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable. *See id.* “It is also reasonable that counsel be reimbursed for mileage and parking costs” as well as gas. *Rand-Whitney Containerboard v. Town of Montville*, No. 96-CV-413, 2006 WL 2839236, at *27 (D.Conn. 2006).

Petitioners do not provide an itemized list of the costs that they are seeking. The time records submitted in support of the application include a category called ‘disbursements.’ The following disbursements are denoted by hand-written asterisks: $37.50 in [unspecified] administrative fees, 11/30/06; $6.50 in [unspecified] administrative fees, 12/31/06; and $136.30 in [unspecified] administrative fees, 4/30/07. Pet. Exh. F. The total of these administrative fees equals $180.30, which is $348.90 less than the amount requested. In

---

[15] This award takes into consideration the issue of proportionality. Given that petitioners have been awarded $242,947.76 in damages, an award of $18,864.50 in attorneys’ fees is not out of proportion to the damages received.

any event, the ‘administrative fees’ description does not adequately explain the nature of the costs incurred. Accordingly, petitioners’ request for costs is denied. *See Kingvision Pay-Per-View, Ltd. v. Castillo Restaurant Corp.*, No. 06-CV-617, 2007 WL 841804, at *7 (E.D.N.Y.2007) (denying request for costs where “plaintiff has submitted no documentary evidence in support of its request . . .”).

*Audit Fees*

Petitioners seek $19,515.00 in audit fees. Requests for audit fees are “generally determined by utilizing the same standards the court applies in awarding attorneys’ fees.” *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, at *5 (E.D.N.Y. 2006) (magistrate judge declined to recommend award of audit costs in an ERISA action where the record was “devoid of any records or time sheets to substantiate the [audit] fees request”); *see also King v. JCS Enters*., 325 F.Supp.2d 162, 173 (E.D.N.Y. 2004)(denying request to recover audit fees in an ERISA action “because the [auditor's] invoices [did] not adequately specify what work was performed”); *Trustees of Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.,* 864 F.Supp. 342, 350-351 (S.D.N.Y. 1994)(“find[ing] that the auditors' billing reports submitted in support of the Trustees' motion provide an inadequate basis upon which to award the auditors' fees . . . claimed”).

Respondent challenges the requested amount in audit fees arguing that it should not be liable for the fees associated with the revised audit, since the revised audit led petitioners to reduce the amount sought by $58,000. However, pursuant to Article VII, Section 5(j) of the Trust Agreement, respondent is liable for the costs of the revised audit, since the results of the revised audit also showed an underpayment of contributions.[16]

Petitioners submit invoices from the accounting firm Buchbinder Tunick & Company in support of their request. Pet. Exh. E. The invoices state the total number of hours spent on the audits as well as the total amount charged, but do not specify the activities performed. Because petitioners have failed to provide any evidence that $19,515.00 is a reasonable fee, petitioners' request for audit fees is denied.

**CONCLUSION**

For the foregoing reasons, petitioners are awarded $18,864.50 in attorneys' fees. The Clerk is directed to enter judgment in favor of petitioners and against respondent in the

---

[16] Article VII, Section 5(j) of the Trust Agreement states:

> In the event that an Employer disputes the result of an audit and the Trust thereby incurs additional auditing fees and costs, the Employer shall be liable to the Trust for such additional fees and costs in the event that the subsequent audit(s) continues to reflect an underpayment of contributions.

Trust Agreement, Pet. Exh. A.

amount of $242,947.76, plus $17,064.85 in liquidated damages, and $15,864.14 in interest, as well as $18,864.50 in attorneys' fees, for a total amount of $294,741.25. The Clerk is also directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated : Brooklyn, New York
February 27, 2008

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge